UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA,**

    Plaintiff,

v.                                      Case No. 6:18-cr-223-Orl-37TBS

**ROSE BETH LITZKY,**

    Defendant.
_____/

## MOTION TO SUPPRESS STATEMENTS

Defendant Rose Beth Litzky, by undersigned counsel, respectfully moves this Court to enter an Order suppressing her statements pursuant to Federal Rules of Criminal Procedure 12(b)(3)(C) and 41(h), the United States Constitution's Fifth Amendment protection against self-incrimination and Fourteenth Amendment's protections of due process. Specifically, Ms. Rose Beth Litzky moves to suppress any and all statements which she made during her September 15, 2016 and February 3, 2017 interrogations.[1]

### I.    FACTUAL BACKGROUND

*Co-Defendant's Traffic Stop on September 15, 2016*

In the early morning hours of September 15, 2016, law enforcement stopped the co-defendant Roberto Oquendo for a traffic offense and arrested Mr. Oquendo. Post-arrest and after the benefit of *Miranda* warnings, he made admissions of previously sexually molesting his two daughters and having a sexual interest in young children.

*1st Questioning on September 15, 2016 at Ms. Litzky's residence* **(duration 12:26)**

---

[1] Copies of audio are attached to this pleading via a CD and courtesy copies provided to Court and AUSA Rivera-Miranda.

As part of its investigation, Brevard County Sheriff's Office Criminal Investigation Division, specifically Agent Cynthia Young and an unidentified officer, spoke to Ms. Litzky at her residence and asked her questions regarding her knowledge of the co-defendant's sexual interest in and access to the minor victims. The questioning included the following questions:

How long was Ms. Litzky in a relationship with him? Did they live in different places? Did she have any concerns about him touching the children? Did she remember him taking any pictures? Did he ever get on to "sexual-type" websites? Did she remember if it was adult pornography or child? Did she have wifi in her residence? Could she send her a screenshot of the wifi?

After approximately 12 minutes, Agent Young and the officer left.

### 2nd Questioning on September 15, 2016 at sheriff's office (duration 57:09)

A few hours later, after speaking to Agent Young, Ms. Litzky was summoned to the sheriff's office. Task Force Officer Michael Spadafora and Task Force Officer Aja Stake interviewed Ms. Rose Litzky at the Criminal Investigation Division. Ms. Litzy was never read her *Miranda* rights. Towards the end of her interrogation, at 54:38, TFO Spadafora stated:

> Now let me ask you. We are here today. Did we threaten you, or pinch you, put a gun on ya to get ya to talk to us.? … You came here voluntarily, on your own free will, right? … You went to high school. You're in college. You're, I mean, you're spelling excellent. You know where you've lived. You're very intelligent but you just have a little speech – it's just a little speech – impediment.

Ms. Litzky made several incriminating remarks throughout this approximately hour-long interrogation.

### Questioning on February 3, 2017 at Ms. Litzky's residence (duration 39:43)

After a forensic examination was completed for Mr. Oquendo and Ms. Litzky's electronic devices, TFO Spadafora and TFO Stake traveled to Ms. Litzky's residence. At the beginning of

the second visit, the agents informed Ms. Litzky that she is free to leave and she's not under arrest. In the first 30 seconds of the second audio, TFO Spadafora stated:

> …But before we get started … um … that doors is unlocked anytime you want you can open the door and leave. You're not under arrest you know that right? We're just here to talk with ya … um … so I just wanna let you know that.

Right after, TFO Stake asked Ms. Litzky, "you're ok talking to us?" to which she replied, "I don't mind."

Ms. Litzy made several incriminating remarks throughout this interrogation.

## II. MEMORANDUM OF LAW

***A.  Ms. Litzky's statements should be suppressed because they were taken in violation of Miranda v. Arizona, 384 U.S. 436 (1966).***

The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. Const. Amend. V.  Ms. Litzky was subjected to custodial interrogation on September 15, 2016 and February 3, 2017. Ms. Litzky was questioned by law enforcement in connection with the information obtained by co-defendant Roberto Oquendo when he was stopped for a traffic-related offense and then arrested for child pornography. In the audio recordings, she was never advised of her constitutional rights by the agents.

The essence of *Miranda* is that the prosecution may not use statements, whether exculpatory or inculpatory, obtained from custodial interrogation of a defendant unless procedural safeguards are used to secure the privilege against self-incrimination. *Miranda*, 384 U.S. at 444-445. The Supreme Court explained that "the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California*, 511 U S. 318, 114

S. Ct. 1526, 1529 (1994) (per curiam). The Court reasoned that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Id.* (quoting *Berkemer v. McCarty*, 468 U.S. 420, 422 (1984)); *see also Illinois v. Perkins*, 496 U.S. 292 (1990).

Determining whether an individual is in custody for *Miranda* purposes is more difficult when the individual has not explicitly been told that he or she is under arrest but has, nonetheless, been deprived of some freedom. The *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. *R.I. v. Innis*, 446 U.S. 291, 300-301 (1980). The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. *Id.*

Although Ms. Litzky was not handcuffed or formally arrested, there was a custodial interrogation because she was subjected to express questioning. In *United States v. Castro*, 723 F.2d 1527 (11th Cir. 1984), the court reversed the lower court's ruling granting the defendant's motion to suppress. The court reasoned that the defendant's statement was "totally unresponsive" to the office's question. The further reasoned that the statement was not "compelled by the officer's question in a custodial setting;" instead, the defendant's statement was "spontaneously volunteered." *Id.* at 1531. Unlike in *Castro*, none of Ms. Litzky' statements were "spontaneously volunteered." All of Ms. Litzky's statements were in response to the express questioning of the task force officers. Ms. Litzky was never properly advised of her *Miranda* rights and she never voluntarily and knowingly waived her rights.

***B. Ms. Litzky's oral statements to law enforcement were not voluntary or the result of a knowing and intelligent waiver.***

Involuntary confessions are inadmissible under the Due Process Clause of the Fourteenth Amendment. *Rogers v. Richmond*, 365 U.S. 534, 540-41 (1961). "Our decisions under that Amendment have made clear that convictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand." *Id*. at 540. A defendant who claims that a confession was involuntary must demonstrate that coercive state action led to the confession. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). In this case, just two and a half minutes into the second interview on September 15, 2016, TFO Stake is not understanding Ms. Litzky due to her severe speech impediment so she puts words in Ms. Litzky's mouth and then asks the question again in a leading manner, to wit:

> Q: How long have you and Roberto been together?
> A: Together for five years.
> Q: Five years?
> A: But me and him were talking long before that.
> Q: You were dating long before that?
> A: Yeah.
> Q: How old were you when you started dating him?
> A: I wasn't dating him; I was talking to him.
> Q: Just talking?
> A: Yes.

(2:40 through 3:06 of second interview). These psychologically manipulative and coercive tactics render her statements involuntary when considering her psychiatric issues, vulnerability, and intellectual disability.

A statement is given voluntarily if, when viewed in the totality of the circumstances, it is the product of an essentially free and unconstrained choice by its maker. *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1972). However, if the individual's will is overborne or his capacity for self-determination is critically impaired, the use of his confession will offend due process, and the statement will be considered involuntary. *Id.* at 226-27. Coercive police activity is a premise to a finding of involuntariness. *Colorado v. Connelly*, 479 U.S. 157, 167 (1986). "In

determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances-both the characteristics of the accused and the details of the interrogation." *Id.*

On several instances during the interrogation the task force officers inserted their own interpretation of Ms. Litzky's statements when her speech impediment made it difficult to understand her answers. The agent expressed dissatisfaction with Ms. Litzky's responses by becoming impatient, cutting off her explanations, and speaking over her on multiple occasions.

Another example of the coercive psychological tactics employed against Ms. Litzky include the following exchange by both officers raising their voices, found at 29:05 of the second interrogation:

> Q (TFO Spadafora): Are you protecting him?
> A: No
> Q (TFO Stake): Are you participating in this?
> A: Yes
> Q (TFO Spadafora): Okay
> Q (TFO Stake): Do you know what that means?
> Q (TFO Spadafora): You know what that means.
> A: Yeah
> Q (TFO Spadafora): Okay, how are you participating, how are you helping him do this?
> A: I'm not [helping] him
> Q (TFO Stake): Well that's what that means by participating. Are you helping him with his clear liking of children?
> A: No

When examining the totality of circumstances at hand, special attention should be paid to the characteristics of the accused. In *Connelly,* the U.S. Supreme Court clarified that mental disabilities do not ipso facto affect the voluntariness prong under *Miranda*. *Id.* at 170. However, mental disabilities are "relevant to an individual's susceptibility to police coercion." *Id.* at 165. In 1994, Ms. Litzky was diagnosed with Mental Retardation and Organic Brain Syndrome when she

became eligible for Social Security at the tender age of 10.[2] Ms. Litzky also has psychiatric issues stemming from longstanding and continuous trauma at the hands of family members and other people, including the co-defendant. She has a discernable speech impediment, making it challenging to understand what she is saying.

Because Ms. Litzky denies that the statements were made voluntarily, she moves this Honorable Court for its Order scheduling an evidentiary hearing as to the admissibility of the statement, as required by the U.S. Supreme Court in *Jackson v. Denno*, 378 U.S. 368 (1964). In *Denno*, the Court held that "A defendant objecting to the admission of a confession is entitled to a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Denno*, 378 U.S. 368 at 380. According to the Eleventh Circuit, "Such a *Jackson v. Denno* hearing is constitutionally mandated for a defendant who timely urges that his confession is inadmissible because not voluntarily given." *United States v. Davidson*, 768 F.2d 1266, 1270 (11th Cir. 1985). And, as discussed above, the government bears a heavy burden in proving that a statement was voluntary. The Eleventh Circuit has also stated that "When a defendant challenges the voluntariness of a confession, the government bears the burden of proving, by a preponderance of the evidence, that the statement was voluntary." *U.S. v. Grimes*, 142 F.3d 1342, 1350 (11th Cir. 1998).

Ms. Litzky's will was overborne, and she gave an involuntary confession. Ms. Litzky's will was overcome as the result of the coercive interrogation tactics used by the government.

### III.   LOCAL RULE 3.01(G) CERTIFICATE OF GOOD FAITH

---

[2] Ms. Litzky was referred to a licensed psychologist in March 2018 and has since been seen by several psychologists, on January 2019, February 2019, and March 2019. Three evaluations will be filed under seal for this Court's review.

Pursuant to Local Rule 3.01(g) and Section II.D. of the Court's Criminal Scheduling Order, the undersigned conferred with counsel for the government on April 8, 2019 and the government opposes the relief requested.

## CONCLUSION

WHEREFORE, Ms. Rose Beth Litzky respectfully requests this Honorable Court to schedule an evidentiary hearing on the merits of this pleading and grant her motion to suppress as her statements were obtained in direct violation of her constitutional rights and were involuntary.

Respectfully submitted,

DONNA LEE ELM
FEDERAL DEFENDER

*s/Karla M. Reyes*
Karla M. Reyes
Assistant Federal Defender
Florida Bar No.0072652
201 S. Orange Avenue, Suite 300
Orlando, FL 32801
Telephone: 407-648-6338
Fax: 407-648-6095
E-Mail: karla_reyes@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that undersigned electronically filed the foregoing with the Clerk of Court (CM/ECF) by using the CM/ECF system this 11th day of April, 2019.

*s/Karla M. Reyes*
Attorney for Ms. Litzky